**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **ROBERT JONATHAN CLASEN,** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **No. 4:15-CV-625-DBB** |
| | § | |
| **NATIONAL BOARD OF OSTEOPATHIC** | § | |
| **MEDICAL EXAMINERS, INC., NOVA** | § | |
| **SOUTHEASTERN UNIVERSITY, HEATH** | § | |
| **PROFESSIONS DIVISION,** | § | |
| | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Before the Court are motions to dismiss filed by Defendant National Board of Osteopathic Medical Examines, Inc. ("NBOME") (Dkt. 14) and Defendant Nova Southeastern University ("NSU") (Dkt. 33) for lack of personal jurisdiction pursuant to Rule 12(b)(2) and and/or improper venue pursuant to Rule 12(b)(3). Alternatively, NSU moves to dismiss for insufficient service under 12(b)(5), and NBOME moves to transfer to the Southern District of Indiana. Having reviewed the motions, the responses, the applicable authorities, and the record in this case, the Court finds that NBOME's motion (Dkt. 14) and NSU's motion (Dkt. 33) should be **GRANTED** in part and **DENIED** in part.

## FACTUAL BACKGROUND

In this case, *pro se* Plaintiff filed suit against NBOME and NSU, as well as the American Association of Colleges of Osteopathic Medicine ("ACOM"). Plaintiff later dropped ACOM from the suit. Dkt. 15. NSU is a private non-profit university organized and existing under the laws of Florida. Dkt. 33 at 6. Among other academic programs, NSU offers a doctoral degree in osteopathic medicine. *Id.* at 7. Its main campus and administrative offices are in Fort

1

Lauderdale-Davie, Florida; it also operates regional campuses in Fort Myers, Jacksonville, Miami-Kendall, Miramar, Orlando, Palm Beach, and Tampa, Florida, and in San Juan, Puerto Rico. *Id.* at 6. NBOME is a non-profit corporation organized and existing under the laws of Indiana, with offices in Chicago, Illinois and Conshohocken, Pennsylvania. Dkt. 14 at 5. NBOME develops and provides a three-level "Comprehensive Osteopathic Medical Licensing Examination" ("COMLEX-USA") for osteopathic medical students and graduates, which is accepted by state licensing boards for osteopathic physicians. *Id.*

Plaintiff's claims arise from his enrollment as a student at NSU beginning in the fall of 2011. *See* Dkt. 1 at ¶ 8. In his complaint, Plaintiff recites a number of allegations related to his work as a "school-approved" tutor at NSU (Dkt. 1 at ¶ 15), his failure of the second two levels of COMLEX-USA administered by NBOME[1] (*see* Dkt. 1 at ¶¶ 31, 32, 40, 42, 48, and 50), alleged harassment and retaliation by NSU and NBOME (*see* Dkt. 1 at ¶¶ 37, 48, 53, and 55), and, ultimately, his dismissal from NSU in March 2015 without earning a diploma (Dkt. 1 at ¶¶ 28-30). Plaintiff's claims against Defendants include violations of 18 U.S.C. §§ 1961-1968 (the "Racketeer Influenced and Corrupt Organization Act" or "RICO"), 18 U.S.C. § 1343 (the federal mail and wire fraud statute), and 18 U.S.C. § 1346 (the so-called "honest services fraud" statute), and breach of contract. Dkt. 1 at 9-11. Plaintiff also alleges "violation of antitrust legislation." *Id.* at 11. However, he identifies no particular statutory provisions in his antitrust allegations.

Defendants NBOME and NSU both argue that because this Court has does not have personal jurisdiction over them, the case should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Alternatively, they both also argue that venue is improper pursuant to 28 U.S.C. § 1391 or 28 U.S.C. § 1965. Alternatively, NSU further argues that it was not properly

---

[1] NBOME is primarily referred to in Plaintiff's complaint as "the artifice in Conshohocken, PA."

served under Rule 4(h).  Alternatively, NBOME argues to transfer all claims to Indiana pursuant to 28 U.S.C. § 1404(a).

## LEGAL STANDARD

### I.    Personal Jurisdiction

In determining whether it may exercise personal jurisdiction over a nonresident defendant, a court must consider "both the forum state's long-arm statute and federal due process."  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993)).  If a state's long-arm statute "extends to the limits of federal due process," as Texas's does, the court must only perform a due process analysis.  *Id.* (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).  Due process allows a federal court to exercise personal jurisdiction over a nonresident defendant only if (1) the nonresident defendant has established minimum contacts by "purposely avail[ing] himself of the benefits and protections of the forum state" and (2) "the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice."  *Id.* (citing *Wilson*, 20 F.3d at 647).

Minimum contacts may be established through either specific or general jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).  General jurisdiction exists if the defendant has had substantial, continuous, and systematic contacts with the forum state, regardless of whether those contacts are related to the cause of action.  *Johnston*, 523 F.3d at 609 (citing *Helicopters Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-19, 104 S. Ct. 1868, 80 L. Ed.2d 404 (1984)).  Specific jurisdiction exists when a nonresident defendant has purposefully directed his activities at the plaintiff and the plaintiff's alleged injuries derive from those activities.  *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) ("Specific

jurisdiction applies when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.") (internal citations omitted); *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

The plaintiff bears the burden of proving that the defendant has had minimum contacts with the forum state; however, the plaintiff need only make a *prima facie* showing of such contact. *Johnston*, 523 F.3d at 609 (citing *Wilson*, 20 F.3d at 648). The court must resolve any disputed facts in favor of the plaintiff and a finding of jurisdiction. *Id.* (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (internal citations omitted). "In considering a motion to dismiss for lack of personal jurisdiction a district court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (internal citations omitted).

If the plaintiff successfully makes a *prima facie* showing of minimum contacts, the burden shifts to the defendant to show "that traditional notions of fair play and substantial justice would be violated by the exercise of jurisdiction." *Johnston*, 523 F.3d at 615 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citations omitted)); *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 382 (5th Cir. 2002)).

Under the fairness inquiry, the court examines: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N'Care*, 438 F.3d at 473 (citing *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 324 (5th Cir. 1996)).

## II.     Improper Venue

28 U.S.C. § 1391(b) provides generally for venue of civil cases in the federal courts:

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Once a defendant raises the issue of improper venue under Rule 12(b)(3), the plaintiffs have the burden to prove that the chosen venue is proper. *Psarros v. Avior Shipping, Inc.*, 192 F.Supp.2d 751, 753 (S.D.Tex.2002). "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed.Appx. 612, 615 (5th Cir.2007) (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir.2004)).  To prevail on a motion to dismiss for improper venue, a defendant must present facts that will defeat

a plaintiff's assertion of venue.  *Id.*  Rule 12(b)(3) allows a case to be dismissed for improper venue. FED. R. CIV. P. 12(b)(3); *see also* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").  If venue is improper, "a district court has broad discretion in determining whether to dismiss or transfer a case in the interest of justice." *Caldwell v. Palmetto State Savs. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir.1987).

## ANALYSIS

### I.      Personal Jurisdiction

In its motion, Defendant NBOME argues that it is not subject to personal jurisdiction in this Court because it is an Indiana corporation, a "non-resident of the state of Texas," has no office, employee, bank account or real estate or other property located in the state of Texas, and does not maintain a registered agent in Texas, or have any post office address or telephone listing in Texas.  See Dkt. 14 at 4 and 14-1.  It only has offices and employees in Conshohocken, Pennsylvania and Chicago, Illinois.  *Id.*  NBOME offers the declaration of Joseph Flamini, its Vice President and Chief Operating Officer, to support these claims.  Dkt. 14-1.  Furthermore, none of the activities that are the subject of Plaintiff's claims against NBOME occurred in Texas. *See, e.g.*, Dkt. 1 at ¶ 31 ("Clasen fail[ed] the artifice in Conshohocken, PA…"); Dkt. 1 at ¶ 40 ("The only thing that Clasen failed was the artifice in Conshohocken, PA…"); Dkt. 1 at ¶ 42 ("Clasen was highly skeptical of the artifice in Conshohocken, PA…").

NSU similarly argues lack of personal jurisdiction because it is a Florida corporation with no offices, employees, bank accounts, real estate, or other property in the state of Texas.  Dkt. 33 at 6.  Its administrative offices and main campus are located in Fort Lauderdale-Davie, Florida,

and it also operates regional campuses in Florida and Puerto Rico. *Id*. NSU acknowledges, however, that it does have a registered agent in Texas. Dkt. 33 at 6 n.7. NSU offers the declaration of Elaine M. Wallace, Dean of the College of Osteopathic Medicine to support its claims. Dkt. 33-1. Ms. Wallace's declaration goes on to state that at the time of enrollment, Plaintiff represented that he was a resident of Colorado and that his enrollment at NSU was not "even remotely related to Texas." *Id*. Further, Plaintiff never enrolled in any classes in Texas, nor participated in any internships, clinical rotations, or elective rotations in Texas. *Id*.

Plaintiff has failed to make any allegations showing that either NSU or NBOME purposefully directed any of the activities from which this litigation arises to the state of Texas. Plaintiff was not a Texas resident at the time of his enrollment at NSU. He took no courses in Texas. Nor did he participate in any internships, clinical rotations, or elective rotations in Texas. Plaintiff's contacts with NBOME occurred either through NSU in Florida or at NBOME testing facilities in Conshohocken, PA. The Court finds that no activities related to Plaintiff's claims have been purposefully directed at Texas. Therefore, this Court has no specific jurisdiction over either NSU or NBOME.

The Court now considers whether Plaintiff has made any allegations to establish that this Court has general jurisdiction over Defendants. General jurisdiction exists if the defendant had "substantial, continuous, and systematic contacts" with Texas, regardless whether those contacts are related to plaintiff's cause of action. *Johnston*, 523 F. 3d at 609-10 (citing *Helicopters Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-19 (1984).

In his response to NBOME, Plaintiff argues – without any meaningful explanation or support – that because NBOME employs "National Faculty in Texas" somehow these "National Faculty" are "the person" separate from "the enterprise" for purposes of personal jurisdiction.

7

Dkt. 20 at 2. The enterprise, according to Plaintiff, is NBOME's national headquarters in Chicago. *Id*. Plaintiff offers as support an unauthenticated document labeled "National Board of Osteopathic Medical Examiners Annual Report 2014" showing the number of "NBOME National Faculty" by state, which identifies that Texas has 40 "National Faculty." Dkt. 20-1, Exhibit A. As further support, Plaintiff offers "Exhibit B" (Dkt. 20-2), which appears to show the number of "National Faculty Locations," not a number of employees as Plaintiff contends in his response (Dkt. 20 at 2). The Court finds Plaintiff's argument unconvincing. NBOME does not appear to contest that it has "National Faculty" who may be "located" in Texas but contends that this alone does not show minimum contacts because more is required than having people located in Texas. Dkt. 42 at 4. Further, Plaintiff "allege[s] no facts or present[s] any evidence that these 'National Faculty' could act for NBOME in Texas." Dkt. 42 at 4-5. NBOME also points out that, to the extent that Plaintiff had any contacts with "National Faculty," it would have been in connection with testing activities that occurred in Conshohocken, Pennsylvania, not in Texas. *Id*. Plaintiff has presented no convincing arguments and has cited to no authority or legal precedent to show how the presence of "National Faculty" in Texas is sufficient to confer personal jurisdiction on NBOME.

NBOME also addresses Plaintiff's poorly articulated argument that the RICO statute confers personal jurisdiction for purposes of his RICO claims. Citing language from § 1965(a) of the RICO statute as quoted in *Rolls-Royce Corp, v. Heros, Inc.*, 576 F. Supp. 2d 765, 778-79, Plaintiff contends that personal jurisdiction is established because at least one defendant "resides, is found, has an agent, or transacts his affairs in the forum …" Dkt. 24 at 4. The Court disagrees. It has been established that NBOME does not have an agent in Texas, and although NSU has a registered agent in Texas (Dkt. 33 at 6), this alone does not establish general

jurisdiction.  *See, e.g.*, *Dominion Gas Ventures, Inc. v. N.L.S., Inc.*, 889 F. Supp. 265, 268 (N.D. Tex. 1995); *Fiduciary Network, LLC v. Buehler*, 2015 WL 2165953, at 6 (N.D. Tex. May 8, 2015).  In *Rolls-Royce*, the defendant "was *found* in the state of Texas when his lawyer accepted service of process on his behalf."  *Rolls-Royce Corp.*, 576 F. Supp. 2d at 780 (emphasis added). Here, Defendants were not served in Texas and, therefore, were not *found* in Texas.  As the court recognized in *Rolls-Royce*, the "transacts his affairs" requirement is construed to "require traditional minimum contact analysis under the state's long arm statute."  *Id*; *see also PT United Can Co. v. Crown, Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998); *Hawkins v. The Upjohn Co.*, 890 F.Supp. 601, 606 (E.D.Tex. 1994).

The Fifth Circuit has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues.  *Johnston*, 523 F.3d at 611.   In this case, Plaintiff has failed to show that either NSU or NBOME meets the continuous and systematic contacts test. The Fifth Circuit has also emphasized that business presence is required in order to confer general jurisdiction.  *Id.*  "[I]n order to confer general jurisdiction a defendant must have a business presence in Texas.... It is not enough that a corporation do business with Texas."  *Id.* Neither Defendant has such a presence in Texas.  The only argument that Plaintiff offers to support his claim that NBOME "transacts its affairs in the Eastern District of Texas" is the presence of "National Contractors in the Eastern District of Texas." Plaintiff's Surreply, Dkt. 24 at 5.  The Court notes that the term "National Contractors" as used by Plaintiff in his surreply is synonymous with the term "National Faculty" used in his response to NBOME's motion to dismiss (*see* Dkt. 20 at 2).   As previously explained, "National Faculty" or "National Contractors" located in Texas is insufficient to confer personal jurisdiction on NBOME.

Neither is the fact that computer based COMLEX-USA examinations are administered in Texas sufficient to confer jurisdiction on NBOME. "NBOME's computer based examinations are administered by Prometric, an independent contractor" and scored by NBOME in Chicago, not in Texas. Dkt. 14 at 10. Plaintiff did not take any NBOME examinations in Texas. The "continuous, and systematics contacts test…[requires] extensive contacts between the defendant and a forum." *Id*. Furthermore, a foreign corporation must engage in "continuous corporate operations within a state" that are "so substantial and of such a nature as to justify suits against it on causes of action arising from dealings entirely distinct from those activities." *Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*, 66 F.Supp. 3d 795, 805-07 (E.D. Tex. 2014) (citing *Daimler AG v. Bauman*, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014)). The corporation's affiliations with the State must be so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id*; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, S.Ct. 2846, 2851, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011); *Int'l Shoe v. State of Washington*, 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This means that the defendant corporation must either be headquartered in the forum state, incorporated in the forum state, or have some equivalent presence in the state. *Daimler*, 134 S.Ct. at 761 n. 19; *Goodyear*, 131 S.Ct. at 2853–54; The Court can find no such extensive contact or continuous operations here. NBOME is incorporated in Indiana and has no registered agent in Texas. It has no office or other physical presence in Texas. While it may have "National Faculty" or "National Contractors" located in Texas, there are no allegations that they have any authority to act on behalf of NBOME. Further, the administration of NBOME examinations in Texas (as well as in all 50 states) does not constitute the requisite "substantial, continuous, and systematics contacts" necessary for a finding of general jurisdiction. *Johnston*, 523 F.3d at 609-10. We thus find that Plaintiff has not

established sufficient contacts to meet the high standard for general jurisdiction. *Johnson*, 523 F.3d at 611. Accordingly, this Court does not have general jurisdiction over NBOME.

Plaintiff similarly fails to allege any grounds for general jurisdiction over NSU. In fact, the Court can find nothing in the record that contains any argument whatsoever that NSU is subject to the general jurisdiction of this Court. NSU is incorporated in the state of Florida. NSU has no office or other physical presence in Texas. NSU does not maintain "continuous and systematic" contacts with Texas. As already explained, the fact that NSU has a registered agent in Texas does not, by itself, establish general jurisdiction. Although NSU maintains an internet website, it is generally accessible to anyone anywhere in the United States and does not specifically target Texas residents. See Dkt. 33 at 10. "[T]he maintenance of a website which is, in a sense, a continuous presence everywhere…" is not sufficiently "substantial" to support general jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002); s*ee also Khalil v. Chatham Coll.*, 391 F. Supp. 2d 588, 594 (S.D. Tex. 2005) (maintaining an Internet website to facilitate business does not automatically subject the entity to general jurisdiction). Like the university's website in *Khalil*, NSU's website was available to Texas residents, just as it was similarly available to residents of all forums. Based on the foregoing, the Court finds no basis for general jurisdiction over NSU.

The Court thus finds that Plaintiff has not made the required *prima facie* showing of the necessary minimum contacts to establish general jurisdiction over Defendants.

## II.    Improper Venue

Defendants NSU and NBOME both argue that venue in this Court is improper under either under either 28 U.S.C. §1391 or 18 U.S.C. §1965, and Plaintiff's claims against them should, therefore, be dismissed per Rule 12(b)(3). Neither Defendant resides in the Eastern

District of Texas. 28 U.S.C. §1391(b)(1). Further, none of the events or omissions alleged in Plaintiff's complaint occurred in the Eastern District of Texas. 28 U.S.C. §1391(b)(2). As discussed above, the events and omissions which are the subject of Plaintiff's complaint occurred in Florida and in Pennsylvania. Plaintiff does not allege that any other specific events or omissions occurred in Texas. The court must therefore conclude that no alleged event or omission giving rise to this claim occurred in Texas. As explained, NSU and NBOME are not subject to personal jurisdiction in this District. 28 U.S.C. §1391(b)(3). Other than stating that the forum selection clause between him and NBOME was "coerced" and "unenforceable" (Dkt. 34 at 1), Plaintiff makes no salient argument in favor of venue in the Eastern District of Texas. Accordingly, the Court determines that venue is improper under §§ 1391(a).

For similar reasons, venue is also improper under 18 U.S.C. § 1965 ("RICO"). Except for the fact that NSU has a registered agent in Texas – which by itself does not establish jurisdiction – none of the requirements for personal jurisdiction under RICO have been alleged nor presented. Neither Defendant resides or is found in this district. Nor do they regularly engage in significant and substantial activities, or conduct business of a substantial and continuous character, sufficient to show that they transact their affairs in this district. Venue is thus improper under 28 U.S.C. §1965.

## RECOMMENDATION

For the foregoing reasons, the court determines that Defendants NSU and NBOME do not have sufficient contacts with the State of Texas to establish general or specific jurisdiction over them and that venue is improper in this district. Accordingly, the Court finds that Defendant NBOME's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Dkt. 14) and Defendant NSU's Motion to Dismiss for Lack of Personal Jurisdiction and

Improper Venue (Dkt. 33) should be **GRANTED**. Although a district court has discretion to transfer a case after finding improper venue if it is in the interest of justice to do, the Court concludes that the record is insufficient in this case for the Court to make a determination as to the proper forum. Accordingly, Defendant NBOME's Motion to Transfer to the Southern District of Indiana (Dkt. 14) should be **DENIED**. In addition, Defendant NSU's Motion to Dismiss for Insufficient Service ((Dkt. 33) should be **DENIED** as moot.

The Court further finds that the following pending motions in this case should be **DENIED** as moot:

1. Plaintiff's Motion Judgment on the Pleadings (Dkt. 19);

2. Defendant NBOME's Motion to Strike Amended Complaint (Dkt. 26)

3. Plaintiff's Motion for Leave to Amend (Dkt. 27);

4. Plaintiff's Motion for Summary Judgment on Count 3 (Dkt. 28);

5. Plaintiff's Motion for Referral to Court Ordered Mediation (Dkt. 29);

6. Plaintiff's "Emergent" Motion for Temporary Restraining Order (Dkt. 35); and

7. Plaintiff's "Urgent" Motion for Miscellaneous Relief (Dkt. 44).

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds

of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 30th day of December, 2015.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE